## TUCKER *vs.* SMITH.

The right of the maker of a promissory note, negotiated after it was over due, to set up, as a defence against the indorsee, transactions between himself and the payee, before its transfer ; is not restricted to equitable grounds of defence only, as, payment, or failure of consideration; but extends to every thing which would have been good in defence against the payee ; such as actual fraud between the parties in the original concoction of the security, &c.

THIS was *assumpsit*, on a promissory note, dated *April* 20, 1817, made by *William Smith* the defendant, to his son *George Smith*, payable on demand, and by him indorsed to the plaintiff.

At the trial, before *Preble J.* the defendant proved that the note was in the possession of the payee till the summer of 1823 ;

that it was in fact made in *March or April* 1818 ; and that al-
though at the time it was made, it was pretended to be given for
a debt due by the maker to his son, for services rendered since
the latter came of age ; yet in truth it was given without con-
sideration, and with the fraudulent intent, on the part of the
defendant, by giving this and other notes, so to reduce his prop-
erty, as to qualify him to be placed on the pension roll of the
United States, he having served as a soldier in the war of the
revolution. He also proved that *George Smith*, before he indors-
ed the note to the plaintiff, said that it was given without consid-
eration ; that the business about which it was given had been
adjusted ; and that he intended to give up the note to his father.

Upon this evidence,the counsel for the plaintiff contended that
the defendant ought not to be admitted to allege his own turpi-
tude by way of defence, notwithstanding the note was over due
when it was indorsed. But the judge instructed the jury that
the action was to be tried upon the same principles as if it were
between the original parties to the note; that the payee, knowing
the intent with which it was given, was a party to the fraud ;
and that therefore the law would not lend its aid, either to him
or to the plaintiff who stood in his place, to enforce the payment.
And he directed them, if they were satisfied of the fraudulent
intent, to find for the defendant ; which they did. And being
interrogated by the judge as to the grounds of the verdict, the
foreman stated that they found that the note was given to enable
the defendant to obtain a pension ; and that the payee had de-
clared it was settled and paid.

The plaintiff excepted to these instructions, and moved for a
new trial, for the misdirection of the jury by the judge.

*J. Holmes*, argued for the plaintiff, that he was an innocent
indorsee, not conusant of any fraud; and therefore stood precisely
on the ground of an innocent purchaser of land from a frandulent
grantee ; whose title, it is well settled, would be good. The
case is the same with the innocent purchaser of any other prop-
erty, where the title of the vendor is voidable only, and not *ipso
facto* void. *Beals v. Guernsey* 8 *Johns.* 446. *Fletcher v. Peck* 6
*Cranch.* 87.

Tucker v. Smith

Though the note was over due, and so far dishonored when it was indorsed, yet this does not authorize the defendant to set up his own fraud by way of defence. *Nullus commodum percipere potest, de injuria sua propria.* The practice of admitting the maker to any original matter of defence against the indorsee, was first adopted in 1739 ; and was placed by *Buller J.* on the ground of fraud in the indorser, in selling a note which had been paid. And the rule has never gone farther than to admit the maker to any equitable defence against the note ; never so far as to allow him to set up his own fraud. *Nemo, allegans turpitudinem suam, est audiendus.* The caution of the courts in this respect, is apparent from *Brown v. Davis 3 D. & E.* 80. See also *O'Callaghan v. Sawyer 5 Johns.* 118. *2 Caines 369. Henrick v. Judah 1 Johns.* 319. He is heard, at law, against the note, no farther than he would be heard in the courts of equity; in which he would be estopped, by his own fraud, in whatever stage of the proceedings it appeared. It is only by shewing that the indorsee was himself a participator in the fraud, that the defendant can avail himself indirectly of his own wrong, under the rule that *in pari delicto, melior est conditio defendentis.*

But the jury do not appear to have found that the payee of the note was conusant of any fraudulent intent in the maker. It is true that a part of the ground of the verdict was that the note had been paid. But this fact cannot sustain the verdict. If the legal ground of the verdict was even much the strongest, and most weighty in the scale, yet if any weight was given to illegal considerations, a new trial ought to be granted. From the answer of the foreman, it is apparent that some of the jury decided on the ground that the note was paid; and others because it was given to enable the maker to obtain a pension. But if the latter consideration had any weight, the verdict was wrong.

*J.* and *E. Shepley*, for the defendant. The record shews that the consideration of the note was not real, but pretended ; and that it was created with the intent to lay a foundation for perjury, and to violate a law of the United States. And this was known to the payee. The note therefore was void. *Thurston v. Mc-*

Tucker v. Smith.

Kown 6 Mass. 428. Ayer v. Hutchins 4 Mass. 370. Hemmenway v. Stone 7 Mass. 58. Loomis v. Pulver 9 Johns. 244. Coolidge v. Blake 15 Mass. 409. Russel v. De Grand ib 35. Wheeler v. Russell 17 Mass. 258. 1 Bos. & Pul. 551. 1 Maule & Selw. 596.

It is also found by the jury that the note was paid, before it was negotiated to the plaintiff. It had therefore lost its negotiable quality, and the plaintiff acquired nothing by the indorsement. Baker v. Wheaton 5 Mass. 509. Webster v. Lee ib. 335. He only stood in the place of the indorser ; having received the note six years after it became due ; and therefore against him the maker is entitled to any defence, which was open to him before it was negotiated. The decided cases recognize no distinction founded on the nature of the defence ; they only regard the character of the holder. If he receives the note fairly before it is dishonored, he acquires rights peculiar to himself. If not, he merely represents the original payee. Boylston v. Greene 8 Mass. 465. Blake v. Sewall 3 Mass. 556. Guild v. Eager & al. 17 Mass. 615.

WESTON J. delivered the opinion of the court.

There is no question but the note in controversy was made by the defendant with a fraudulent intent; but it is urged that it does not sufficiently appear that this was known to George Smith, the original payee. The report states the ground upon which the note was really made ; that it was antedated, and that a fictitious consideration was pretended. Of the two latter facts the payee could not be ignorant ; and knowing these, especially considering the relation in which the parties stood to each other, his knowledge of the fraudulent motives, by which the maker was actuated, might well be presumed. The jury were instructed by the judge, that George, the payee, knowing the intent with which the note was given, was a party to the fraud ; and that therefore it could not be enforced by him, or by the plaintiff, against whom the same defence might be sustained. That George, knowing the fraud, is a party thereto, is tantamount to saying, if George knew the fraud ; and the jury, under this

Tucker *v* Smith.

instruction, returning a verdict for the defendant, must be understood to have found this fact.

It is essential to the validity of a contract that it be founded on a good and sufficient consideration. The want of it, however, cannot be averred against an instrument under seal ; a consideration being implied from the solemnity of its execution. A negotiable note, for value received, carries with it *prima facie*, but not conclusive evidence of a consideration, subject however to be impeached and disproved between the original parties. But after it has been negotiated, and goes into the hands of a *bona fide* indorsee, except under certain circumstances, where a note is declared by statute to be absolutely void, it cannot by law be defeated, upon the ground of a want or defect of consideration. This rule is adopted, that the free circulation of negotiable paper which is found to answer the most valuable commercial purposes, may not be impeded. If, however, the indorsee knew or might have known the circumstances under which the note was given, the rule does not apply. In the case of *Brown v. Davis*, cited in the argument, *Ld. Kenyon* intimated an opinion that to let in a defence of this nature against an indorsee, he must be proved to have had a knowledge of the facts, upon which it was founded ; but the opinion given by Justice *Buller*, and by the other members of the court, that this defence may be sustained against him whenever the note had been dishonored before it was negotiated, had ever since been regarded as settled law. And this upon the ground, that the receiving of a note thus circumstanced, by which his suspicions as to its genuiness, or its existing validity, ought to have been awakened, may be considered as evidence either of a knowledge on his part, if he made inquiry, or of negligence, if he did not. It rarely happens in cases to which this rule is applied, that the holder is injured ; he being often the mere instrument of the payee, or where he is not, having an adequate remedy against him.

The counsel for the plaintiff has contended that, by the principles of law and the adjudged cases, the generality of the rule before stated is so modified that no defence can be sustained against an indorsee, not proved to have had actual knowledge of

the circumstances under which the note was made, except what may be regarded as equitable. But we do not understand the principle to be thus limited. We find that a defence arising from proof of an illegal or fraudulent consideration, has been received against an indorsee, who became such after the dishonor of a note, as well as a want or failure of consideration, or payment before the negotiation of the note.

In *Thurston v. McKown* 6 *Mass.* 428, cited in the argument, *Parsons C. J.* says, " It is certainly a correct principle of law, that if the indorsee purchase a note, when from the length of time in which it has been payable, there is reasonable cause to suspect that it has been dishonored, he shall not deprive the maker of any defence, which would avail him against the promisee." And in *Ayer v. Hutchins* 4 *Mass.* 372, he says, " if the indorsee receives the note under circumstances, which might reasonably create suspicions that it was not good, he ought, before he takes it, to inquire into the validity of the note; and if he does not, he must take it subject to any legal defence, which might be made against a recovery by the promisee."

The defence arising from the averment and proof of an illegal consideration, operates as an exception to the maxim, that no one shall take advantage of his own wrong, or be permitted to allege his own turpitude. It is with a view to suppress illegal and fraudulent contracts, by withholding from them all legal remedies, by which they might be enforced. The purity of the law is thus preserved ; and it is relieved from the imputation of ministering to the consummation of a fraud.

It is of great public importance that the law in regard to negotiable paper, being once settled, should be steadily adhered to. It has been settled, and it is very generally known, that where a note has been indorsed after it is due, it is open to every ground of defence, which could have been sustained between the original parties. To qualify this rule by distinctions and refinements, would destroy its simplicity, and render it less easy to be understood. It tends to the furtherance of justice and the suppression of fraud, and leaves the holder to look, as he ought to do, to the party of whom he received it, for his indemnity, where

there is no secret trust and confidence between them, which is not unfrequently the case.

The opinion of the court is, that the jury were properly instructed at the trial, and that there must be

*Judgment on the verdict.*